Darren P.B. Rumack
THE KLEIN AND CARDALI LAW GROUP
39 Broadway, 35th Floor
New York, NY 10006
Phone: 212-344-9022; Fax: 212-344-0301

Johnmack Cohen
DEREK SMITH LAW GROUP, PLLC
One Penn Plaza, Suite 4905
New York, New York 10119
Phone: 212-587-0760; Fax: 212-587-4169
*Attorneys for Plaintiffs and the putative class.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**ANDREA AMAYA,**
**BENCHER MONTEBON,**
**OLSI VELO,**
**JASMIN DZOGOVIC,**
**RICHARD ANTON,**
**SARAH PRUITT,**
individually and on behalf of others similarly situated,

**CLASS AND**
**COLLECTIVE ACTION**
**AMENDED COMPLAINT**

**Plaintiffs,**

Plaintiffs Demand a Trial
By Jury

**-against-**

**LA GRANDE BOUCHERIE LLC, THE GROUP**
**US MANAGEMENT LLC, and EMIL STEFKOV,**

**Defendants.**

     **ANDREA AMAYA ("AMAYA"), BENCHER MONTEBON ("MONTEBON"),**

**OLSI VELO ("VELO"), JASMIN DZOGOVIC ("DZOGOVIC"), RICHARD ANTON**

**("ANTON"), SARAH PRUITT ("PRUITT")** ("Plaintiffs"), on their own behalf and on behalf

of others similarly situated, by and through their attorneys, The Klein and Cardali Law Group,

PLLC and Derek Smith Law Group, PLLC, as and for Plaintiffs' Complaint in this action against

the Defendants **LA GRANDE BOUCHERIE, LLC, THE GROUP US MANAGEMENT**

**LLC ("THE GROUP"), and EMIL STEFKOV** individually ("STEFKOV") (hereinafter collectively referred to as "Defendants"), respectfully alleges as follows upon information and belief:

<u>**NATURE OF THE CASE**</u>

1.      This is a class and collective action brought by Plaintiffs on their own behalf and on behalf of a proposed collective identified below. Plaintiffs, and the proposed collective, were or are employed as food service workers (i.e., servers, bussers, runners, sommeliers, bartenders, barbacks, and hostesses) by Defendants.

2.      This action is brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.,* ("FLSA") and the New York Labor Law § 190 et seq. ("NYLL") for unlawful retaliation and to recover unpaid minimum wages, unlawfully misappropriated tips, call-in pay, uniform purchase and maintenance costs, and other monies.

3.      Defendants have failed to compensate their food service workers at the state minimum wage, unlawfully misappropriated a portion of their tips, and frequently scheduled Plaintiffs to work to only send them home without providing Plaintiffs their call-in pay.

4.      Plaintiffs seek injunctive and declaratory relief against Defendants' unlawful actions, economic damages, return of the tip credit (i.e. the difference between the full applicable minimum wage and the hourly wage Defendants actually paid to their food service workers), return of the misappropriated tips, return of unpaid wages, withheld call-in pay, liquidated damages, punitive damages, compensatory damages, interest, attorneys' fees and costs as permitted in accordance with the FLSA and NYLL, and all other legal and equitable remedies as the Court deems appropriate.

<u>**JURISDICTION AND VENUE**</u>

5.      This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b), and 28 U.S.C. § 1331 and 1337, and has supplemental jurisdiction over Plaintiffs' NYLL claims pursuant to 28 U.S.C. §§ 1332 and 1367.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1331, as the location of Boucherie, the restaurant where Plaintiffs worked, is in the Southern District of New York.

## PARTIES

7.      Plaintiff AMAYA, a resident of New York State, was employed by Defendants as a server at their restaurant, La Grande Boucherie, located at 145 West 53rd Street, New York, New York 10119 from around September 2020 through the present.

8.      Plaintiff MONTEBON, a resident of New York State, was employed by Defendants as a bartender at their restaurant, La Grande Boucherie, located at 145 West 53rd Street, New York, New York 10119 from around May 2021 through the present.

9.      Plaintiff DZOGOVIC, a resident of New York State, was employed by Defendants as a server at their restaurant, La Grande Boucherie, located at 145 West 53rd Street, New York, New York 10119 from around February 2022 through around August 17, 2023.

10.     Plaintiff ANTON, a resident of New York State, was employed by Defendants as a server at their restaurant, La Grande Boucherie, located at 145 West 53rd Street, New York, New York 10119 from around September 2020 through the present.

11.     Plaintiff VELO, a resident of New York State, was employed by Defendants as a server at their restaurant, La Grande Boucherie, located at 145 West 53rd Street, New York, New York 10119 from around January 2021 through around April 2022.

12.     Plaintiff PRUITT, a resident of New York State, was employed by Defendants as a server at their restaurant, La Grande Boucherie, located at 145 West 53rd Street, New York, New York 10119 from around September 2020 through the present.

13.     Plaintiffs were Defendants' employees within the meaning of the FLSA and NYLL.

14.     At all times material, Defendant LA GRANDE BOUCHERIE, LLC was and is a domestic limited liability company duly existing by the virtue and laws of the State of New York that does business in the State of New York.

15.     At all times material, Defendant THE GROUP, was and is a domestic limited liability company duly existing by the virtue and laws of the State of New York that does business in the State of New York.

16.     Defendants LA GRANDE BOUCHERIE, LLC and THE GROUP are New York limited liability companies that own and operate LA GRANDE BOUCHERIE, a restaurant located at 145 West 53rd Street, New York, New York 10119.

17.     Upon information and belief, Defendants jointly and individually have an annual gross volume of sales in excess of $500,000.00.

18.     At all times material, Defendant STEFKOV was and is owner and operator of Defendants LA GRANDE BOUCHERIE, LLC, THE GROUP and their restaurant LA GRANDE BOUCHERIE, and has been an active manager with authority to control the pay practices and employment policies.

19.     At all relevant times, corporate Defendants have been and continue to be an "employer" engaged in "commerce" and/or in the production of goods for commerce, within

the meaning of the FLSA, 29 U.S.C. § 203, New York Labor Law and all applicable state and local statutes and laws.

20.     All Defendants are hereinafter collectively referred to as "Defendants."

**COLLECTIVE ACTION ALLEGATIONS**

21.     Plaintiffs bring their FLSA claims on behalf of themselves and similarly situated employees (i.e., servers, bussers, runners, sommeliers, bartenders, barbacks, and hostesses) who are, or have been employed by Defendants in the three years preceding the filing of this Action.

22.     The members of the FLSA collective have been victims of Defendants' common policies and practices which have denied Plaintiff and the collective of earned tips.

23.     The FLSA Collective consists of servers, runners, bussers, sommeliers, bartenders, barbacks and hostesses who during their employment with Defendants, fell into the category of "tipped employees," who customarily earned more than $30.00 per month in tips and were required by Defendants to participate in a tip-pooling system whereby all of Defendants' guests' tips were aggregated and shared pursuant to a formula described herein.

24.     As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs and the FLSA collective by engaging in a pattern, practice and policy of violating the FLSA. This pattern, practice and policy includes:

    a.  Depriving food service workers of the tips they earned;

    a.  Improperly taking a tip credit toward food service workers' wages;

    b.  Failing to make timely payments of wages;

    c.  Making unlawful deductions from wages; and

    d.  Forcing employees to purchase their own required uniform and pay for the

maintenance of the uniform.

25.      Defendants have engaged in unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees' compensation by willfully and knowingly violating the FLSA.

26.      The FLSA collective would benefit from the issuance of a court supervised notice of the present lawsuit and the opportunity to join this action.

27.      The identities of these similarly situated employees are or should be known to Defendants and are locatable through Defendants' business records.

## CLASS ACTION ALLEGATIONS

28.      Pursuant to Rule 23 of Federal Rules of Civil Procedure, Plaintiffs bring this lawsuit as a class action on behalf of all food service employees who are employed or who have been employed by Defendants within six years prior to the filing of this Complaint.

29.      **Numerosity:** The potential number of persons in the Class is so numerous that joinder of all members would be unfeasible and impractical. The disposition of their claims through this class action will benefit both the parties and this Court. The number of persons in the Class is unknown to Plaintiffs at this time; however, it is estimated that the number exceeds 50 individuals.

30.      **Commonality and Typicality:** The claims of Plaintiffs (for violations of the FLSA and NYLL based on their maintenance of an invalid tip pool, failing to provide call-in pay, and illegally paying Plaintiffs and the class a rate of below the minimum wage) is typical of the claims of all of the other members of the Class because all of them sustained similar injuries and damages arising out of Defendants' common course of conduct in violation of

law and the injuries and damages of all of the other members of the Class were caused by Defendants' wrongful conduct as described in this Complaint.

31.     **Ascertainable Class:** The proposed Class is ascertainable in that its members can be identified and located using information contained in Defendants' payroll and personnel records.

32.     **Adequacy:** Plaintiffs are adequate representatives of the Class; will fairly protect the interests of the other members of the Class; have no interests antagonistic to the members of the Class; and will vigorously pursue this suit via attorneys who are competent, skilled and experienced in litigating matters of this type. Class Counsel is competent and experienced in litigating large wage payment class actions.

33.     **Superiority:** The nature of this action makes the use of the class action vehicle a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the other members of the Class for the wrongs alleged herein, as follows:

    a.   This case involves a large corporate Defendant and a large number of individuals with many relatively small claims and common issues of law and fact

    b.   If each individual member of the Class was required to file an individual lawsuit, Defendants would necessarily gain an unconscionable advantage because, with its vastly superior financial and legal resources, it would be able to exploit and overwhelm the limited resources of each individual member of the Class;

    c.   Requiring each individual member of the Class to pursue an individual remedy would also discourage the assertion of lawful claims by members of the Class who would be disinclined to pursue an action against Defendants because of an appreciable and justifiable fear of retaliation;

d.   The prosecution of separate actions by the individual members of the Class, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual members of the Class against Defendants; would establish potentially incompatible standards of conduct for Defendants, would result in legal determination with respect to individual members of the Class which would, as a practical matter, be dispositive of the interest of the other members of the Class who are not parties to the adjudications; and/or would substantially impair or impede the ability of the members of the Class to protect their own interests;

e.   The claims of the individual members of the Class may not be sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses thereto;

f.   Furthermore, as the damages suffered by each individual member of the Class may be relatively small, the expense and burden of individual litigation would make it difficult of impossible for individual member of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action; and

g.   The costs to the court system of adjudication of such individualized litigation would be substantial.

## **FACTS**

34.   The FLSA and NYLL allow employers of "food service workers" to pay their tipped employees at a rate below the normal federal and state minimum wages by applying a tip credit towards certain eligible employees' wages.

35.     The FLSA and the NYLL provide that in order to be eligible for this tip credit, employers of tipped employees must inform food service workers about their intention to apply the tip credit towards the employees' wages and also must allow employees to keep all of the tips that they receive.

36.     Managers and other non-service employees are prohibited from sharing in the tips received by the "food service workers."

37.     The FLSA and NYLL permit employees to participate in a tip pool where tipped employees combine all of their tips together and then redistribute them amongst themselves.

38.     At all times relevant hereto, from around November 2020 through early 2023, Defendants established and imposed a tip pool upon Defendants' food service workers, yet Defendants improperly failed to distribute all of the incoming tips to Defendants' food service workers.

39.     Defendants monitor and track the daily tips received at LA GRANDE BOUCHERIE through the TOAST APPLICATION while Defendants monitor and track the daily tips distributed to Defendants' food service workers through the PAYDAY APPLICATION.

40.     Accordingly, the total daily tips distributed to Defendants' food service workers reflected in the PAYDAY APPLICATION and the total daily tips at LA GRANDE BOUCHERIE reflected in the TOAST APPLICATION should reconcile.

41.     However, these two applications reflected significant discrepancies resulting in Defendants' improperly withholding around thousands of dollars in tips each night from Defendants' food service workers.

42.     By way of example, including but not limited to,

9

i.      On or about December 4, 2021, Defendants' PAYDAY APPLICATION reflected around $26,108.41 in total tips distributed to Defendants' food service workers, while Defendants' TOAST APPLICATION reflected around $29,286.01 in total tips brought into LA GRANDE BOUCHERIE, a discrepancy of around $3,177.60 in tips not distributed to Defendants' food service workers.

ii.      On or about December 11, 2021, Defendants' PAYDAY APPLICATION reflected around $28,338.48 in total tips distributed to Defendants' food service workers, while Defendants' TOAST APPLICATION reflected around $31,420.07.01 in total tips brought into LA GRANDE BOUCHERIE, a discrepancy of around $3,081.59 in tips not distributed to Defendants' food service workers.

iii.      On or about December 31, 2021, Defendants' PAYDAY APPLICATION reflected around $21,119.00 in total tips distributed to Defendants' food service workers, while Defendants' TOAST APPLICATION reflected around $25,009.55 in total tips brought into LA GRANDE BOUCHERIE, a discrepancy of around $3,890.55 in tips not distributed to Defendants' food service workers.

43.      Defendants have violated both the FLSA and NYLL by not distributing all of the tips brought into LA GRANDE BOUCHERIE to its food service workers.

44.      By these and other acts, Defendants have taken gratuities belonging to Plaintiffs and the FLSA Collective and unlawfully retained tips, thereby preventing the food service workers from retaining all of the tips left for them in violation of the FLSA and NYLL.

45.      Because Defendants established an illegal tip pooling scheme at LA GRANDE BOUCHERIE, they are not entitled to take advantage of the tip credit and reduce the

minimum wages of Plaintiff and the FLSA Collective by applying the tip credit allowance that is available under the FLSA and the NYLL.

46.     Between December 2021 through around February 2022, Defendants also required the food service workers to share a percentage of their tips with two (2) captains who acted in a managerial capacity.

47.     By mandating the participation of these two (2) captains in the tip pool, Defendants have violated both the FLSA and NYLL.

48.     Specifically, Defendants had two (2) Captains, SUSANNA HOLDER ("HOLDER") and AARON BLANKFIELD ("BLANKFIELD"), who acted as managers, improperly participate in the tip pool. HOLDER and BLANKFIELD did not act in a service capacity, did not engage in any direct food service to patrons, and had managerial authority, (which service staff did not have) to, by way of example, including but not limited:

   a.  void checks;

   b.  inform upper-level managers to issue write-ups to certain employees;

   c.  provide free complimentary items to certain customers;

   d.  direct servers to provide free complimentary items to customers;

   e.  assist in performance evaluations of servers;

   f.  assign tasks to service staff like taking inventory of silverware and other table items, as well as assigning servers which tables to work;

   g.  HOLDER and BLANKFIELD wore the managers' formal uniform, which was a suit, unlike servers who were required to wear a white shirt and apron;

   h.  HOLDER and BLANKFIELD did not have an assigned section of the restaurant to work like servers did. Rather, they monitored and oversaw the entire restaurant

in a managerial capacity ensuring that the entire service staff was carrying out

their job duties and responsibilities;

     i.   HOLDER and BLANKFIELD did not serve tables like the servers did. They

managed the service staff;

49.    Defendants' service staff did not have the above-mentioned managerial authority.

Accordingly, Defendants improperly allowed HOLDER and BLANKFIELD to retain tips,

which should have been distributed to Plaintiffs.

50.    Additionally, Defendants had a widespread pattern and practice of withholding

call-in pay from Defendants' food service workers, including Plaintiffs.

51.    Around winter 2022, Defendants scheduled Plaintiff PRUITT to work a particular

shift only to send Plaintiff PRUITT home when she arrived for her shift without providing

any payment to Plaintiff PRUITT for this.

52.    Around April 2021, on around one (1) occasion, Defendants scheduled Plaintiff

ANTON to work a particular shift only to send Plaintiff ANTON home when he arrived for

this shift without providing any payment to Plaintiff ANTON for this.

53.    Around July 2022, Defendants scheduled Plaintiff DZOGOVIC to work a

particular shift only to send Plaintiff DZOGOVIC home when he arrived for this shift

without providing any payment to Plaintiff DZOGOVIC for this.

54.    Around late summer 2021, on around three (3) occasions and around winter 2022,

on around three (3) occasions, Defendants scheduled Plaintiff AMAYA to work a particular

shift only to send Plaintiff AMAYA home when she arrived for these shifts without providing

any payment to Plaintiff AMAYA for this.

55.     Around summer 2022, on around one (1) occasion, Defendants scheduled Plaintiff MONTEBON to work a particular shift only to send Plaintiff MONTEBON home when he arrived for his shift without providing any payment to Plaintiff MONTEBON for this.

56.     Defendants required female Plaintiffs and the female FLSA collective and other female food service workers to wear a white button-down shirt, black dress pants, suspenders, and black dress shoes.

57.     Defendants required male Plaintiffs and the male FLSA collective and other male food service workers to wear a white button-down shirt, black dress pants, a vest, a black tie, and black dress shoes.

58.     Defendants required Plaintiffs and the FLSA Collective to purchase these uniforms and to maintain these uniforms.

59.     Defendants were required to provide these uniforms to Plaintiffs and the FLSA Collective but instead made Plaintiffs and the FLSA Collective bear the cost of purchasing these clothing items.

60.     Defendants were required to launder or pay for the maintenance of these uniforms but instead made Plaintiffs and the FLSA Collective bear the cost of laundering and maintaining these clothing items.

61.     Around January 2023, Plaintiff DZOGOVIC retained counsel and informed Defendants that he intended to pursue these wage and hour and tip misappropriation claims. Around June 2023, Defendants were informed that Plaintiff DZOGOVIC and the other Plaintiffs in this matter would proceed accordingly and move forward with this action.

62.     Shortly thereafter, around August 10, 2023, Defendants retaliated against Plaintiff DZOGOVIC and issued two (2) pretextual write-ups to Plaintiff DZOGOVIC for patron

complaints primarily regarding the taste of the food, which has nothing to do with Plaintiff's job duties and responsibilities as a server. Subsequently, around August 17, 2023, Defendants further retaliated against Plaintiff and wrongfully terminated Plaintiff for these pretextual reasons.

63.     Defendants retaliated against Plaintiff DZOGOVIC for complaining about Defendants' wage and hour violations and misappropriation of tips. Defendants retaliated against Plaintiff DZOGOVIC for engaging in a protected activity.

64.     Plaintiffs claim a continuous practice of violations under the FLSA and NYLL and claim a continuous violations and make all claims herein under the continuing violations doctrine.

**FIRST CAUSE OF ACTION**
**FLSA – Unlawful Tip Retention (Against All Defendants)**

65.     Plaintiffs repeat and re-allege the allegations in this contained as if they were set forth herein fully at length.

66.     Defendants are employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a).FLSA § 203(m)(2)(b) states that "[A]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

67.     Defendants unlawfully distributed portions of the tips received by Plaintiff and the FLSA Collective to managerial employees and unlawfully retained portions of tips that should have been distributed to Plaintiffs.

68.     Defendants were aware of, or should have been aware that the practices described in this Complaint were unlawful and did not make a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective.

69.     As a result of Defendants' willful violations of the FLSA, Plaintiffs and the FLSA

Collective suffered damages to be determined at trial and are entitled to the recovery of such

amounts and liquidated damages, pre-judgment interest, post-judgment interest, attorneys'

fees, costs, and other damages pursuant to the FLSA.

**SECOND CAUSE OF ACTION**
**FLSA-RETALIATION**

70.     Plaintiffs repeat and re-allege the allegations in this contained as if they were set

forth herein fully at length.

71.     Plaintiff DZOGOVIC through his attorneys engaged in protected activity and

made various complaints to Defendants regarding Defendants' FLSA violations.

72.     In response to Plaintiff DZOGOVIC's protected activity under the FLSA,

Defendants retaliated against him.

73.     A reasonable employee would have found each retaliatory act described herein to

be materially adverse. Each retaliatory act alleged herein could dissuade a reasonable

employee from making or supporting a complaint about wage and hour violations.

74.     Defendants retaliated against Plaintiff DZOGOVIC, as alleged herein, in order to

harass and intimidate him and to otherwise interfere with his attempts to vindicate his rights

under the FLSA.

75.     By engaging in the retaliatory acts alleged herein, Defendants retaliated against

Plaintiff DZOGOVIC, discriminated against him, and penalized him in violation of the

FLSA, 29 USC § 215(a)(3).

76.     Plaintiff DZOGOVIC has suffered damages, including, but not limited to

emotional distress damages and lost wages as a result of Defendants' retaliation.

77.     Defendants subjected Plaintiff DZOGOVIC to such retaliation that altered the terms and conditions of his employment.

78.     Plaintiff DZOGOVIC is entitled to equitable relief, monetary relief including but not limited to compensatory. economic and other damages, reasonable attorneys' fees and costs, punitive damages and other appropriate relief.

### THIRD CAUSE OF ACTION
### NYLL – Unpaid Minimum Wages
### (Against All Defendants)

79.     Plaintiffs repeat and re-allege the allegations in this contained as if they were set forth herein fully at length.

80.     Defendants are employers within the meaning NYLL §§ 190, 651(5), 652 and the supporting New York State Department of Labor regulations, and employed Plaintiffs.

81.     Defendants were required to pay Plaintiffs the applicable minimum wage rate under the NYLL.

82.     Defendants were not eligible to avail themselves of the tipped minimum wage rate under the NYLL because, *inter alia,*

    a.   Defendants unlawfully distributed portions of the tips received by Plaintiffs and the FLSA Collective to employees in positions that do not customarily and regularly receive tips, in violation of the NYLL and its supporting regulations;

    b.   Defendants illegally made impermissible deductions in the amount of tips given to Plaintiff and the FLSA Collective.

83. Defendants were aware of should have been aware that the practice described in this Complaint were unlawful and did not make a good faith effort to comply with the NYLL with respect to the compensation of Plaintiffs.

84. As a result of Defendants' willful violations of the NYLL, Plaintiffs suffered damages to be determined at trial and are entitled to the recovery of such amounts and liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, costs, and other damages pursuant to the NYLL.

**FOURTH CAUSE OF ACTION**
**NYLL – Unlawful Tip Deductions**
**(Against All Defendants)**

85. Plaintiffs repeat and re-allege the allegations in this contained as if they were set forth herein fully at length.

86. NYLL § 196-d prohibits employers or their agents from demanding or accepting directly or indirectly any part of the gratuities received by an employee, or retaining any part of a gratuity or any charge purported to be a gratuity for an employee.

87. Defendants unlawfully retained tips from Plaintiffs and failed to provide Plaintiffs with all tips they earned.

88. As a result of Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants their unpaid tips, reasonable attorneys' fees, liquidated damages, and pre-judgment interest and post-judgment interest.

**FIFTH CAUSE OF ACTION**
**12 NYCRR 146-1.5 – §146-1.5 Call-In Pay Unlawful Tip Deductions**
**(Against All Defendants)**

89. Plaintiffs repeat and re-allege the allegations in this contained as if they were set forth herein fully at length.

90. Pursuant to N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.5

(a)      An employee who by request or permission of the employer reports for duty on any day, whether or not assigned to actual work, shall be paid at the applicable wage rate:

(1) for at least three hours for one shift, or the number of hours in the regularly scheduled shift, whichever is less;

(2) for at least six hours for two shifts totaling six hours or less, or the number of hours in the regularly scheduled shift, whichever is less; and

(3) for at least eight hours for three shifts totaling eight hours or less, or the number of hours in the regularly scheduled shift, whichever is less.

(b)      For purposes of this section, applicable wage rate shall mean:

(1) Payment for time of actual attendance calculated at the employee's regular or overtime rate of pay, whichever is applicable, minus any customary and usual tip credit;

(2) Payment for the balance of the period calculated at the basic minimum hourly rate with no tip credit subtracted. Payment for the balance of the period is not payment for time worked or work performed and need not be included in the regular rate for the purpose of calculating overtime pay.

(3) Call-in pay shall not be offset by any credits for meals or lodging provided to the employee.

18

(c)     Call-in pay shall not be offset by any credits for meals or lodging provided to the employee.

(d)     A regularly scheduled shift is a fixed, repeating shift that an employee normally works on the same day of each week. If an employee's total hours worked or scheduled to work on a given day of the week change from week to week, there is no regularly scheduled shift.

(e)     This section shall apply to all employees, regardless of a given employee's regular rate of pay.

91.     Defendants had a widespread pattern and practice of withholding call-in pay from Defendants' food service workers, including Plaintiffs.

92.     Defendants frequently scheduled Plaintiffs to work a particular shift only to send Plaintiffs home when they arrived without paying Plaintiff's for their time in violation of N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.5.

93.     Plaintiffs hereby make a claim against Defendants under all applicable paragraphs of N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.5.

94.     Defendants violated the above and Plaintiffs suffered numerous damages as a result.

**SIXTH CAUSE OF ACTION**
**NYLL-RETALIATION**
**(Against All Defendants)**

95.     Plaintiff DZOGOVIC repeats and re-alleges the allegations in this contained as if they were set forth herein fully at length.

96.     Plaintiff DZOGOVIC attempted to enforce his rights under the NYLL by complaining about Defendants' wage and hour violations and misappropriation of tips.

97.     Plaintiff DZOGOVIC's actions are protected activity under NYLL § 215.

98.     In response to Plaintiff DZOGOVIC asserting his rights under NYLL, Defendants retaliated against him.

99.     A reasonable employee would have found each retaliatory act described herein to be materially adverse. Each retaliatory act alleged herein could dissuade a reasonable employee from making or supporting a complaint about wage and hour violations.

100.     Defendants retaliated against Plaintiff DZOGOVIC, as alleged herein, in order to harass and intimidate him and to otherwise interfere with his attempts to vindicate his rights under the NYLL.

101.     By engaging in the retaliatory acts alleged herein, Defendants retaliated against Plaintiff DZOGOVIC, discriminated against him, and penalized him in violation of NYLL § 215.

102.     Plaintiff DZOGOVIC has suffered damages, including, but not limited to emotional distress damages and lost wages as a result of Defendants' retaliation.

103.     Defendants subjected Plaintiff DZOGOVIC to such retaliation that altered the terms and conditions of his employment.

104.     Notice of this claim has been served upon the Attorney General pursuant to NYLL § 215(2).

105.     Plaintiff DZOGOVIC is entitled to equitable relief, monetary relief including but not limited to compensatory, economic and other damages, reasonable attorneys' fees and costs, punitive damages and other appropriate relief.

**SEVENTH CAUSE OF ACTION**
**NYLL – Uniform Expense**
**(Against All Defendants)**

106.     Plaintiffs repeat and re-allege the allegations in this contained as if they were set forth herein fully at length.

107.     Defendants required female Plaintiffs and the female FLSA collective and other female food service workers to wear a uniform consisting of white button-down shirt, black dress pants, suspenders, and black dress shoes.

108.     Defendants required male Plaintiffs and the male FLSA collective and other male food service workers to wear a uniform consisting of white button-down shirt, black dress pants, a vest, a black tie, and black dress shoes.

109.     Defendants required Plaintiffs to bear the cost of purchasing and maintaining the required uniforms in violation of 12 N.Y.C.R.R.§ 146-1.8.

110.     As a result of Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants their unpaid tips, reasonable attorneys' fees, liquidated damages, and pre-judgment interest and post-judgment interest.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that judgment be granted awarding Plaintiffs:

(a) Compensatory damages;

(b) Liquidated damages;

(c) Prejudgment and post-judgment interest;

(d) Attorneys' fees and costs;

(e) Punitive damages;

(f) Economic Damages;

(g) Backpay damages

(h) Frontpay damages

(i)  Statutory damages;

(j)  Call-in pay wages; and

(k)  Such other legal and equitable relief as the Court deems necessary and proper.

Dated: December 8, 2023
New York, New York

DEREK SMITH LAW GROUP, PLLC

By: /s/Johnmack Cohen_____
Johnmack Cohen
One Penn, Plaza, Suite 4905
New York, NY 10119
Phone: 212-587-0760
Fax: 212-587-4169
*Attorneys for Plaintiffs and proposed FLSA
collective plaintiffs and Rule 23 class.*

THE KLEIN AND CARDALI LAW
GROUP PLLC

By: /s/Darren P.B. Rumack_____
Darren P.B. Rumack
39 Broadway, 35th Floor
New York, NY 10006
Phone: 212-344-9022
Fax: 212-344-0301
*Attorneys for Plaintiffs and proposed FLSA
collective plaintiffs and Rule 23 class.*

## <u>CONSENT TO BECOME PARTY PLAINTIFFS</u>

By my signature below, I hereby authorize the filing and prosecution of my claims in my name and on my behalf to contest the failure of Defendants and/or their respective owners, affiliated companies, subsidiaries, predecessors, successors, contractors, directors, officers, franchisees, and/or affiliates to pay minimum wage, as required under state and/or federal law, and for making illegal wage deductions and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorney's fees and costs and all other matter pertaining to this lawsuit.

| Signature | Date | Printed Name |
|---|---|---|
| | 12 / 07 / 2023 | Andrea Amaya |
| | 12 / 07 / 2023 | Bencher Montebon |
| | 12 / 07 / 2023 | Olsi Velo |
| | 12 / 07 / 2023 | Jasmin Dzogovic |
| | 12 / 07 / 2023 | Richard Anton |
| Sarah H Pruitt | 12 / 07 / 2023 | Sarah H Pruitt |