UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

 ------------------------------------------------------------------------ X    Case No. 23-cv-08897 (LJL)

ANDREA AMAYA, BENCHER MONTEBON,
OLSI VELO, JASMIN DZOGOVIC, RICHARD
ANTON, SARAH PRUITT,
*individually and on behalf of others similarly situated,*

                            Plaintiffs,

        -against-

LA GRANDE BOUCHERIE LLC, THE GROUP US
MANAGEMENT LLC, and EMIL STEFKOV,

                            Defendants.

 ------------------------------------------------------------------------ X

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT</u>

KAUFMAN DOLOWICH LLP
*Attorneys for Defendants*

By: Alexandra L. Robins
245 Main Street, Suite 330
White Plains, New York 10601
srobins@kaufmandolowich.com

**TABLE OF CONTENTS**

FACTUAL & PROCEDURAL BACKGROUND ........................................................................ 2

LEGAL STANDARD ............................................................................................................... 3

ARGUMENT ........................................................................................................................... 3

    A.   The Amended Complaint Fails to State a Claim for Unlawful Tip Retention Under the FLSA (Claim 1) ............................................................................................................ 3

    B.   The Amended Complaint Fails to State a Claim for Unpaid Minimum Wages Under the NYLL (Claim 3) ...................................................................................................... 5

    C.   The Amended Complaint Fails to State a Claim for "Unlawful Tip Deductions" (Claim 4) ............................................................................................................................ 9

    D.   The Complaint Fails to State a Claim for NYLL "Call-In Pay Unlawful Tip Deductions" (Claim 5) ............................................................................................... 11

    E.   The Amended Complaint Fails to State a Claim for NYLL "Uniform Expense" (Claim 7) .......................................................................................................................... 12

    F.   The Amended Complaint Fails to State a Claim for Retaliation Uder FLSA and NYLL (Claims 2 & 6) ...................................................................................................... 14

    G.   Alternatively to Dismissing the Retaliation Claims, the Court Should Dismiss the Claim for Unlawful Tip Retention Under the FLSA and Decline to Exercise Supplemental Jurisdiction Over the Remaining State Law Claims ........................................ 17

CONCLUSION ....................................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**                                                                           **Page(s)**

*Yunganaula v. Garcia,*
2021 WL 5993622 (E.D.N.Y. Dec. 17, 2021) ........................................................ 14

*Alfonso v. Mougis Logistics Corp.,*
2021 WL 5771769 (S.D.N.Y. Dec. 6, 2021) ........................................................... 5

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................................... 3

*Baldia v. RN Express Staffing Registry LLC,*
633 F.Supp.3d 693 (S.D.N.Y. 2022) ...................................................................... 6

*Barenboim v. Starbucks Corp.,*
21 N.Y.3d 460 (2013) ......................................................................................... 7, 8

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 554 (2007) ............................................................................................... 3

*Chen v. Shanghai Café Deluxe, Inc.,*
2023 WL 2401376 (S.D.N.Y. Mar. 8, 2023) ......................................................... 4

*City of Chicago v. Int'l Coll. of Surgeons,*
522 U.S. 156 (1997) ............................................................................................. 17

*Clark Cnty. Sch. Dist. v. Breeden,*
532 U.S. 268 (2001) ............................................................................................. 16

*Colvin v. State Univ. Coll. at Farmingdale,*
2014 WL 2863224 (E.D.N.Y. June 19, 2014) ...................................................... 15

*DiFolco v. MSNBC Cable L.L.C.,*
622 F.3d 104 (2d Cir. 2010) ................................................................................ 10

*Environmental Servs. v. Recycle Green Services,*
7 F.Supp.2d 260 (E.D.N.Y. 2014) ......................................................................... 9

*Fridman v. GCS Computers LLC,*
2019 WL 1017534 (S.D.N.Y. Mar. 4, 2019) ....................................................... 10

*Gregory v. Stewart's Shops Corp.,*
2015 WL 893058 (N.D.N.Y. Mar. 2, 2015) ......................................................... 12

*In re Merrill Lynch & Co.,*
273 F.Supp.2d 351 (S.D.N.Y. 2003) ...................................................................... 9

*Int'l Audiotext Network, Inc. v. AT&T Co.,*
62 F.3d 69 (2d Cir.1995) ..................................................................................... 10

*Jackson v. Cnty. of Rockland,*
450 Fed.Appx. 15 (2d Cir. 2011) ......................................................................... 15

*Jones v. Halstead Mgmt. Co., LLC,*
81 F.Supp.3d 324 (S.D.N.Y. 2015) ...................................................................... 10

*Kugler v. Donahoe,*
2014 WL 1010317 (E.D.N.Y. Mar. 17, 2014) ...................................................... 16

*Lennert v. Delta-Sonic Carwash Systems, Inc.,*
2022 WL 18859077 (W.D.N.Y. 2022) .................................................................. 12

*Lopez-Serrano v. Rockmore,*
132 F.Supp.3d 390 (E.D.N.Y. 2015) .................................................................... 10

*Lu v. Jing Fong Rest., Inc.,*
    503 F.Supp.2d 706 (S.D.N.Y. 2007) ............................................................... 13
*Mullins v. City of N.Y.,*
    554 F.Supp.2d 483 (S.D.N.Y. 2008) ............................................................... 14
*Otor, S.A. v. Credit Lyonnais,*
    2006 WL 2613775 ................................................................................................ 8
*Papasan v. Allain,*
    478 U.S. 265 (1986) ............................................................................................ 3
*Promisel v. First American Artificial Flowers,*
    943 F.2d 251 (2d Cir. 1991) ............................................................................ 17
*Salinas v. Starjem Restaurant Corp.,*
    123 F.Supp.3d 442 (S.D.N.Y. 2015) ............................................................... 13
*Shum v. Jili Inc.,*
    2023 WL 2974902 (E.D.N.Y. Mar. 19, 2023) ................................................. 4
*United States v. Klinghoffer Bros. Realty Corp.,*
    285 F.2d 487 (2d Cir. 1960) ............................................................................. 5
*Wisconsin Dept. of Corrections v. Schacht,*
    524 U.S. 381 (1998) ......................................................................................... 17

**Statutes**

28 U.S.C. §1367 .................................................................................................... 17
28 U.S.C. §1367(a) ............................................................................................... 17
28 U.S.C. §1367(c) ............................................................................................... 17
29 U.S.C. §201 ....................................................................................................... 1
New York Labor Law ("NYLL") §190 ................................................................. 1

**Rules**

Federal Rules of Civil Procedure ("FRCP") 12(b)(6) ...................................... 1, 3

**Regulations**

12 N.Y.C.R.R. §146–1.8 ...................................................................................... 12
12 N.Y.C.R.R. §146-1.7(b) .................................................................................. 13
12 N.Y.C.R.R. §146-1.5(a)(1) ............................................................................. 11
12 NYCRR 146–2.14 ............................................................................................. 7
29 C.F.R. §778.109 ................................................................................................ 5

Defendants La Grande Boucherie LLC, The Group US Management LLC, and Emil Stefkov (collectively "Defendants") submit this Memorandum of Law in Support of their Motion to Dismiss the Amended Complaint ("AC") of Plaintiffs Andrea Amaya, Bencher Montebon, Olsi Velo, Jasmin Dzogovic, Richard Anton, and Sarah Pruitt, pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The AC asserts claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 et seq., and the New York Labor Law ("NYLL") §190 et seq. for: (1) FLSA unlawful tip retention; (2) FLSA retaliation (Dzogovic only); (3) NYLL unpaid minimum wages; (4) NYLL unlawful tip deductions; (5) NYLL call-in pay; (6) NYLL retaliation (Dzogovic only); and (7) NYLL uniform cost and maintenance pay.

As discussed in detail below, the AC fails to allege the most basic factual components of a wage and hour claim, namely, the hourly rate of any Plaintiff, how many hours per week such Plaintiff worked, and how much money such Plaintiff earned in any given week. Without these facts, the AC cannot establish that Plaintiffs' average hourly rate of pay ever fell below the minimum wage. Plaintiffs also fail to plead that the tip pool was improperly constituted on account of two captains participating in it, since it admits that the captains had contact with patrons and the statute expressly allows for captains to participate if they are client-facing. In any case, there is no relief available for an improperly constituted tip pool. Moreover, Plaintiffs' claim that Defendants unlawfully withheld tips they earned is directly rebutted by the extrinsic evidence that Plaintiffs invited when they purported to quote to Defendants' records. Plaintiffs also fail to identify any facts or circumstances necessary to state a claim for NYLL call-in pay, and wrongly claim entitlement to uniform pay for ordinary street clothes. As for Dzogovic's retaliation claims, they are entirely conclusory and make no sense, as the other Plaintiffs engaged in the same protected

1

activity and no one else who was still employed when they engaged in protected activity was terminated. At the very least, Dzogovic's retaliation claims arise out of different nucleus of operative fact from the class and collective actions for unpaid wages.

Accordingly, Defendants respectfully request that the Court grant this motion and dismiss the AC in its entirety, or dismiss the lone FLSA minimum wage claim and decline to exercise supplemental jurisdiction over the remaining state law wage claims.

## FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs are a group of non-exempt, tipped servers and bartenders at La Grande Boucherie, a high-end contemporary French restaurant in Manhattan. They bring this action on behalf of themselves, a putative collective and putative class of non-exempt tipped employees who claim that they were subjected to unlawful pay practices by Defendants. Specifically, they claim that tip money was withheld from them because on three occasions in December 2021, the app that tracks tips and the app that tracks pay did not reconcile. AC ¶¶39-42. Plaintiffs also vaguely allege that there was an instance when they were scheduled to work but were instead sent home with no pay. AC ¶¶51-55. Finally, Plaintiffs allege that they are owed money for purchasing and/or laundering "uniforms." AC ¶58-60. For women, "uniforms" are defined by "white button-down shirt, black dress pants, suspenders, and black dress shoes." AC ¶56. For men they are defined by "a white button-down shirt, black dress pants, a vest, a black tie, and black dress shoes." AC ¶57.

Dzogovic also brings two individual claims for retaliation. As the AC alleges, around January 2023, Dzogovic retained counsel and informed Defendants that he intended to pursue wage and hour and tip misappropriation claims. See AC ¶61. "Around June 2023, Defendants were informed Dzogovic and the other Plaintiffs in this matter would proceed accordingly and move forward with this action." AC ¶61. As the AC also alleges, all Plaintiffs except Dzogovic

and Velo are currently employed. AC ¶¶ 7, 8, 10, 11, 12.  Dzogovic was terminated on August 17, 2023. AC ¶9, 62.  Velo has not worked for Defendants since April 2022. AC ¶11.

Plaintiffs commenced this action on October 12, 2023, by the filing of a Complaint [Doc 9]. Defendants waived service [Docs 13, 14, 15].  On November 7, 2023, Defendants filed a Motion to Dismiss the Complaint [Docs 20, 21, 22].  On December 7, 2023, Plaintiffs timely filed an Amended Complaint ("AC") [Doc 25].  The AC did not cure the deficiencies in the Complaint, although it added some new ones.  Therefore, this motion follows.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to FRCP 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must take the well-pleaded factual allegations as true and construe the facts in the light most favorable to the non-moving party. *Papasan v. Allain*, 478 U.S. 265, 283 (1986).  A complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions" devoid of "further factual enhancement" in order to survive dismissal. *Twombly*, 550 U.S. at 555, 557. The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## ARGUMENT

### A. The Amended Complaint Fails to State a Claim for Unlawful Tip Retention Under the FLSA (Claim 1)

The AC fails to state a claim for unlawful tip retention under the FLSA because "the FLSA prohibits retaining tips only to the extent that the employer then claims a tip credit and pays less than the minimum wage." *Chen v. Shanghai Café Deluxe, Inc.*, 16-cv-4790, 2023 WL 2401376, at *9 (S.D.N.Y. Mar. 8, 2023); *Shum v. Jili Inc.*, 17-cv-7600, 2023 WL 2974902, at *12 (E.D.N.Y. Mar. 19, 2023)("Under the FLSA, a plaintiff can bring a claim for tip misappropriation to the extent that the misappropriation of the tips leaves the plaintiff with hourly wages in an amount less than the minimum wage.")  An employee "who suffered tip misappropriation" can "recover the unpaid minimum wages" but "cannot recover the tips under the FLSA." *Id.*

Despite having two tries, Plaintiffs still do not allege what their average hourly rate of pay was, how many hours they worked in a given week, or what they were paid for that week, or any other facts from which one could conclude that they were paid less than minimum wage, so the AC necessarily does not state a claim for unlawful tip retention under the FLSA.

The only specific allegations regarding wages are that, on three dates, December 4, 11 and 31 of 2021, the two digital applications that Defendants use to track total tips for all employees were off by around $3,177.60, around $3,081.59, and around $3,890.55, respectively. AC ¶42.  No Plaintiff actually alleges that he was not issued all of his tips on any particular date, only that there was a discrepancy with respect to how much was in the tip pool in which all tipped employees share, and that as a group, Plaintiffs, together with an unknown number of other employees, did not receive all the tips to which they were entitled.

But even if a Plaintiff alleged that he was not issued all of his tips on the any of the three particular dates cited, without alleging how many hours he worked on those dates and how much compensation he received therefor, he does not allege that the purported tip shorting on those dates brought him below the minimum wage.

In any case, even if any Plaintiff had alleged that he personally was shorted tips he earned on December 4, 11, or 31, 2021, and alleged that the total compensation he received for those dates when measured against the total hours he worked on that day brought him under the minimum wage, he still would not state a claim for violation of the minimum wage because an employee's wage rate is calculated on a per-week, not per-day basis. See 29 C.F.R. §778.109 (average hourly wage is calculated "by dividing his total remuneration for employment ... in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."). Thus, "an employer violates the FLSA minimum wage provision if the number of hours actually worked [in a] week, multiplied by the minimum hourly statutory requirement is less than the number of wages paid for the week." *Alfonso v. Mougis Logistics Corp.*, No. 21-cv-5302 (LJL), 2021 WL 5771769, at *4 (S.D.N.Y. Dec. 6, 2021) quoting *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960). "[A]s long as a Plaintiff's average wage exceeds the federal minimum wage, it does not matter how that average is calculated." *Alfonso,* 2021 WL 5771769, at *4. Therefore, the Complaint fails to state a claim for unlawful tip retention under the FLSA.

## B. The Amended Complaint Fails to State a Claim for Unpaid Minimum Wages Under the NYLL (Claim 3)

The AC alleges that "Defendants were not eligible to avail themselves of the tipped minimum wage rate under the NYLL because, inter alia, Defendants unlawfully distributed portions of the tips received by Plaintiffs and the FLSA Collective to employees in positions that do not customarily and regularly receive tips, in violation of the NYLL and its supporting regulations;" AC ¶82a, and "Defendants illegally made impermissible deductions in the amount of tips given to Plaintiff and the FLSA Collective." AC ¶82b. This claim is fatally defective as it does not actually allege - - even in a conclusory fashion - - that Defendants failed to pay Plaintiffs

less than the statutory minimum wage.  Affording Plaintiffs every favorable inference, at most, it alleges indirectly that Defendants were running an unlawful tip pool and therefore were not entitled to take a tip credit against the minimum wage.  But it does not state that Defendants did take a tip credit against the minimum wage, nor that taking such tip credit resulted in Plaintiffs actually earning less than minimum wage.

"An employee cannot state a claim for a minimum wage violation unless [her] average hourly wage falls below the ... minimum wage." *Baldia v. RN Express Staffing Registry LLC*, 633 F.Supp.3d 693, 712 (S.D.N.Y. 2022).  As noted in Section A, above, the AC does not allege that any Plaintiff's average hourly rate of pay was, how many hours they worked in a given week and what they were paid for that week, or any other facts from which this necessary information could be derived.  Because Plaintiffs do not allege how much they were paid, they necessarily do not allege they were paid less than the minimum wage.

With respect to sharing tips with captains, the AC appears to allege that Defendants required "food service workers to share a percentage of their tips with 2 captains who acted in a managerial capacity." AC ¶46.  It goes on to allege:

> Specifically, Defendants had two (2) Captains, SUSANNA HOLDER ("HOLDER") And AARON BLANKFIELD ("BLANKFIELD"), who acted as managers, improperly participate in the tip pool. HOLDER and BLANKFIELD did not act in a service capacity, did not engage in any direct food service to patrons, and had managerial authority (which service staff did not have) to, by way of example, including but limited:
> a. void checks,
> b. inform upper-level managers to issue write-ups to certain employees,
> c. provide free complimentary items to customers,
> d. direct servers to provide free complimentary items to customers,
> e. assist in performance evaluations of servers;

f. assign tasks to service staff like taking inventory of silverware and other table items, as well as assigning servers which tables to work;

g. HOLDER and BLANKFIELD wore the managers' formal uniform, which was a suit, unlike servers who were required to wear a white shirt and apron;

h. HOLDER and BLANKFIELD did not have an assigned section of the restaurant to work like servers did. Rather, they monitored and oversaw the entire restaurant in a managerial capacity ensuring that the entire service staff was carrying out their job duties and responsibilities

i. HOLDER and BLANKFIELD did not serve tables like the servers did. They managed the service staff;

AC ¶48.

This allegation is not sufficient to allege that these two captains' participation in the tip pool rendered it invalid.

The New York Court of Appeals has held that "an employee whose personal service to patrons is a principal or regular part of his or her duties may participate in an employer-mandated tip-allocation arrangement under Labor Law §196–d, even if that employee possesses limited supervisory responsibilities." *Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 472 (2013). Moreover, the Hospitality Wage Order specifically identifies captains as eligible to participate in the tip pool. See 12 NYCRR 146–2.14[e][8] ("captains who provide direct food service to customers").

The Court should not credit the general allegation that the captains "did not engage in any direct food service to patrons." AC ¶48. The AC more specifically states that these captains had the power to themselves "provide free complimentary items to certain customers," AC ¶48-c, not to be confused with the power to "direct servers to provide free complimentary items to customers," AC ¶48-d. The Court should not "accept allegations that are contradicted or

undermined by other more specific allegations in the complaint." *Otor, S.A. v. Credit Lyonnais*, No. 04-cv-6978, 2006 WL 2613775, at * (S.D.N.Y. Sept. 11, 2006).

Still further, the Complaint's list of the captains' supposedly managerial powers do not reflect "meaningful authority or control over subordinates," which is the test articulated by the Court of Appeals to determine if an employee is or is not "similar to waiters and busboys," and may share in tips. *Barenboim,* 21 N.Y.3d at 473 ("there comes a point at which the degree of managerial responsibility becomes so substantial that the individual can no longer fairly be characterized as an employee similar to general wait staff within the meaning of  Labor Law § 196–d").  Meaningful authority might include "the ability to discipline subordinates, assist in performance evaluations or participate in the process of hiring or terminating employees, as well as having input in the creation of employee work schedules, thereby directly influencing the number and timing of hours worked by staff as well as their compensation." *Id.*

Here, the captains' managerial authority to "void checks, inform upper-level managers to issue write-ups to certain employees, provide free complimentary items to customers, direct servers to provide free complimentary items to customers, and assign tasks to service staff like taking inventory of silverware and other table items as well as assigning servers which tables to work" does not, as a matter of law, constitute the kind of meaningful and substantial authority over tipped employees or otherwise render them ineligible to participate in the tip pool.  The allegation that captains also had the authority to "assist in performance evaluations," is the only factor from the meaningful authority list cited in the caselaw.  In any case, no Plaintiff actually alleges that Holder or Blankenfield assisted in their performance evaluations.

The second part of this allegation, that management unlawfully deducted a portion of employee's tips, is asserted as its own claim and is thus analyzed separately below.

**C. The Amended Complaint Fails to State a Claim for "Unlawful Tip Deductions" (Claim 4)**

As the AC alleges, Defendants monitor and track the daily tips received through an application called Toast, and monitor and track the daily tips distributed to tip pool participants through an application called Payday. AC ¶39.  The AC alleges that there was a discrepancy between what Toast reflected and what Payday reflected on three particular dates in December 2021.  It does that by setting forth the exact amount of money purportedly reflected in each app, as follows:

> i. On or about December 4, 2021, Defendants' PAYDAY APPLICATION reflected around $26,108.41 in total tips distributed to Defendants' food service workers, while Defendants' TOAST APPLICATION reflected around $29,286.01 in total tips brought into LA GRANDE BOUCHERIE, a discrepancy of around $3,177.60 in tips not distributed to Defendants' food service workers.
> ii. On or about December 11, 2021, Defendants' PAYDAY APPLICATION reflected around $28,338.48 in total tips distributed to Defendants' food service workers, while Defendants' TOAST APPLICATION reflected around $31,420.07.01 in total tips brought into LA GRANDE BOUCHERIE, a discrepancy of around $3,081.59 in tips not distributed to Defendants' food service workers.]
> iii. On or about December 31, 2021, Defendants' PAYDAY APPLICATION reflected around $21,119.00 in total tips distributed to Defendants' food service workers, while Defendants' TOAST APPLICATION reflected around $25,009.55 in total tips brought into LA GRANDE BOUCHERIE, a discrepancy of around $3,890.55 in tips not distributed to Defendants' food service workers.

AC ¶42.

As relevant here, in adjudicating a motion to dismiss, the Court may consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents integral to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint…" *Environmental Servs. v. Recycle Green Services*, 7 F.Supp.2d 260, 270 (E.D.N.Y. 2014) quoting *In re Merrill Lynch & Co.*, 273 F.Supp.2d 351, 356–57 (S.D.N.Y. 2003).

Here, the entirety of Plaintiff's wage claim is based upon this allegation, that these were the numbers reflected in each app on each date. They are, in every sense, purporting to quote from a record, and as such, are heavily relying upon its terms. "[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss []." *Int'l Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

Accordingly, Defendants are entitled to submit the actual Payday records that Plaintiffs purport to cite and which cited information forms the sole basis for their claim that Defendants unlawfully withheld some of their tips. See *Fridman v. GCS Computers LLC*, 17-cv-6698, 2019 WL 1017534, at *3 (S.D.N.Y. Mar. 4, 2019)("this Court may consider extrinsic evidence, such as the timesheets, when deciding a motion to dismiss, especially where, as here, the time records are referenced in the Amended Complaint."); see also *Jones v. Halstead Mgmt. Co., LLC*, 81 F.Supp.3d 324, 331–32 (S.D.N.Y. 2015)("When the document reflects a factual issue (such as an email correspondence) and the complaint specifically refers to the contents of the email communication, the Court can deem the e-mail incorporated in the complaint and therefore subject to consideration in its review of the adequacy of the [allegations in the] complaint.") quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 112 (2d Cir. 2010); *Lopez-Serrano v. Rockmore*, 132 F.Supp.3d 390, 400 (E.D.N.Y. 2015)(considering a copy of the parties' text messages submitted in support of the motion to dismiss, seeing as Plaintiff "quoted various portions of these text messages" and "the alleged contents of these messages also form the basis of the Plaintiff's claims of retaliation under the FLSA and NYLL and underpin her allegations of willfulness.").

As set forth in the accompanying Declaration of Angela Wang, the Payday App totals on December 4, 2021, December 11, 2021 and December 31, 2021, copies of which are annexed thereto as Exhibit A, all reveal that prior to payday when apps were fully reconciled, Payday reflected the same amount of tips for those three dates as Plaintiffs allege were the amount of tips actually earned on those dates.

### D. The Complaint Fails to State a Claim for NYLL "Call-In Pay Unlawful Tip Deductions" (Claim 5)

New York's Hospitality Industry Wage Order has a call-in pay provision.  It provides, in pertinent part:

> An employee who by request or permission of the employer reports for duty on any day, whether or not assigned to actual work, shall be paid at the applicable wage rate: (1) for at least three hours for one shift, or the number of hours in the regularly scheduled shift, whichever is less.

12 N.Y.C.R.R. §146-1.5(a)(1).

Here, Plaintiffs allege that during their employment, they were "scheduled to work a particular shift only to be sent home without being provided any pay" AC ¶¶51-55.  Specifically, Pruitt alleges that this happened "around Winter 2022," Anton once in April 2021, Dzogovic "around July 22," Amaya on three occasions in around late summer and around Winter 2022 on around three occasions, and Montebon on one occasion around summer 2022. *Id.*[1]

---

[1] Defendants also note that the allegations in the AC have changed drastically on this claim.  Pruitt originally alleged that she was sent home without call-in pay on 22 occasions during her employment, but now alleges that she was sent home without call-in pay around winter 2022 and does not specify the number of occasions.  Anton originally alleged that he was sent home without pay 38 times over the course of his employment, but now alleges he was sent home once around April 2021.  Dzogovic originally alleged he was sent home without pay 34 times from February 2022 to August 17, 2023, but now alleges that this happened around July 2022 without specifying how many times.  Amaya originally alleged that she was sent home without pay six times between November 2020 and June 2021, but now alleges that she was set home without pay three times in late summer 2021 and three times in late summer 2022, all six times of which are different than the six times she originally alleged because they all occur after June 2021, the latest time she originally cited.  Montebon originally alleged he was sent home without pay 10 times from May 2021 to February 2023, and now alleges that he was sent home without pay once in summer 2022.

Upon these allegations, the AC fails to state a claim for NYLL call-in pay because it does not identify any specific facts setting forth the circumstances under which a Plaintiff was scheduled for a shift and sent home when they arrived. See *Lennert v. Delta-Sonic Carwash Systems, Inc.*, 20-cv-479, 2022 WL 18859077, at *6 (W.D.N.Y. 2022), report and recommendation adopted as modified on other grounds, Mar. 31, 2023 (dismissing claim for call-in pay when Complaint alleged only that "sometimes" Defendant "unlawfully refused to pay Plaintiffs … for at least 4 hours when they commenced their shift at the carwash, but were asked to leave before the completion of four hours.").  These boilerplate allegations fail to state a plausible claim for call-in pay. See *Gregory v. Stewart's Shops Corp*., No. 7:14-cv-33, 2015 WL 893058, at *8 (N.D.N.Y. Mar. 2, 2015)("The allegations that plaintiffs were regularly called in for meetings and to work shifts but were not paid the statutorily required call-in wage amount to nothing more than [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.").

**E.  The Amended Complaint Fails to State a Claim for NYLL "Uniform Expense" (Claim 7)**

Under New York law, an employer cannot require its employees to pay for the cost of purchasing a required uniform. 12 N.Y.C.R.R. §146–1.8 ("When an employee purchases a required uniform, he or she shall be reimbursed by the employer for the total cost of the uniform no later than the next payday.").  A required uniform is "clothing required to be worn while working at the request of an employer ... except clothing that may be worn as part of an employee's ordinary wardrobe," meaning "ordinary basic street clothing selected by the employee where the employer permits variations in details of dress." *Id.*  Employers are also typically required to pay

"uniform maintenance pay" for the maintenance of their employees' required uniforms. See 12 N.Y.C.R.R. §146-1.7(b).

The term "uniform" is also not expressly defined. However, the U.S. Department of Labor's Field Operations Handbook ("FOH") suggests that, "[a]lthough there are no hard-and-fast rules in determining whether certain types of dress are considered uniforms," where an employer "permits variations in details of dress," "a general type of ordinary basic street clothing [that is required] to be worn while working...would not be considered...[a] uniform[ ]." FOH §30c12(f)(1). "On the other hand ... a specific type and style of clothing [that is required] to be worn at work, e.g. where a restaurant or hotel requires a tuxedo or a skirt and blouse or jacket of a specific or distinctive style, color, or quality...would be considered [a] uniform[ ]." *Id.* §30c12(f)(1)(b).

In the AC, Plaintiffs allege that

> 55. Defendants required female Plaintiffs and the female FLSA collective and other female food service workers to wear a white button-down shirt, black dress pants, suspenders, and black dress shoes.
> 56. Defendants required male Plaintiffs and the male FLSA collective and other male food service workers to wear a white button-down shirt, black dress pants, a vest, a black tie, and black dress shoes.

AC ¶55-56.

A white button-down shirt, black dress pants, black dress shoes, suspenders, a vest and a tie are all "ordinary basic street clothing" and thus do not constitute a uniform under the NYLL. *Salinas v. Starjem Restaurant Corp.*, 123 F.Supp.3d 442, 447 (S.D.N.Y. 2015) quoting *Lu v. Jing Fong Rest., Inc.*, 503 F.Supp.2d 706, 712 (S.D.N.Y. 2007)(concluding that "black dress pants, black socks, and black leather shoes ... do not qualify as a uniform"); *Hai Ming Lu v. Jing Fong Restaurant, Inc.*, 503 F.Supp.2d 706, 712 (S.D.N.Y. 2007)("white button-down shirts, black dress pants, black socks, and black leather shoes," [] do not qualify as a uniform.").

Otherwise ordinary street clothes may constitute a uniform if they are required to be purchased from the employer, or be of a particular style, brand, or type. See U.S. Dep't of Labor, Wage & Hour Div., Op. Letter 1–2 (May 15, 2008), available at http://www.dol.gov/whd/opinion/FLSA/2008/2008_05_15_04_FLSA.pdf (explaining that "darkcolored," closed-toed shoes with a non-slip sole, which may be of any "quality, brand, style, model, or type" and purchased from the employee's vendor of choice, are not a "uniform"). Here, in the absence of any allegation that Defendants imposed a particular quality, brand, style, model, or type on such items, they bear no responsibility for the costs of these purchases. *Yunganaula v. Garcia*, 19-cv-6247, 2021 WL 5993622, at * (E.D.N.Y. Aug. 11, 2021) report and rec. adopted as modified on other grounds, 2021 WL 5984851 (E.D.N.Y. Dec. 17, 2021)(denying default judgment on NYLL uniform claim where Plaintiff did not allege that the pants he was required wear had any branding, that he was required to purchase them from Defendants, or any facts from which the Court could conclude these pants could not be worn as Plaintiff's "ordinary wardrobe."). And, because the clothing in question does not constitute a uniform under the NYLL, Defendants therefore have no obligation to pay Plaintiffs for maintaining them.

### F.  The Amended Complaint Fails to State a Claim for Retaliation Under FLSA and NYLL (Claims 2 & 6)

FLSA §215(3) makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter…". In order to establish a prima facie case of retaliation under the FLSA, a plaintiff must show "(1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of N.Y.*, 554 F.Supp.2d 483, 488 (S.D.N.Y. 2008). Here, Dzogovic has not stated a claim for FLSA

or NYLL retaliation because there are no facts that support a causal connection between the protected activity and the adverse action, only facts which support the opposite inference.

According to the AC:

> Around January 2023, Plaintiff DZOGOVIC retained counsel and informed Defendants that he intended to pursue these wage and hour and tip misappropriation claims. Around June 2023, Defendants were informed that Plaintiff DZOGOVIC and the other Plaintiffs in this matter would proceed accordingly and move forward with this action.

AC ¶61.

The AC goes on to allege that on August 10, 2023, Defendants retaliated against Dzogovic by issuing him two pretextual write-ups and further retaliated against him around August 17, 2023, by terminating his employment. AC ¶62. The AC contains no other facts about Dzogovic's employment at all, let alone facts to support an inferential link between the protected activity and his termination.  Thus, any inferential link between the protected activity and the adverse action relies solely on a logical fallacy that confuses correlation with causation.  In the absence of any other fact linking the August 2023 employment actions against Dzogovic with the January protected activity of the group, this is nothing but a bald, conclusory assertion that, because Dzogovic was terminated after he engaged in protected activity, he was terminated because of his protected activity. See *Colvin v. State Univ. Coll. at Farmingdale*, No. 13–cv–3595, 2014 WL 2863224, at *20 (E.D.N.Y. June 19, 2014)(noting that "[t]o satisfy the causal connection requirement of the prima facie case" in the context of a motion to dismiss, a plaintiff "may not rely on conclusory assertions of retaliatory motive"); *Jackson v. Cnty. of Rockland*, 450 Fed.Appx. 15, 19 (2d Cir. 2011)(finding that a complaint's "bald assertions of ... retaliation, unsupported by any comments, actions, or examples ... from which [the court] could infer that the defendants

15

possess[ed] a ... retaliatory motive, [were] implausible and insufficient to survive a motion to dismiss").

Although a plaintiff "can plead a causal connection ... indirectly[ ] ... by showing a temporal relationship" between protected activity and adverse action, such a relationship gives rise to an inference of retaliatory motive only where "the protected activity was followed closely in time" by the adverse action. See *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)(per curiam)("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close.").  Here, there is eight months between the protected activity and the adverse action, and this period of time alone is too attenuated to establish the requisite connection. See, e.g., so *Kugler v. Donahoe*, 2014 WL 1010317, at *9 (E.D.N.Y. Mar. 17, 2014)(collecting cases within the Second Circuit holding that a span of even two months defeats an inference of causal relationship).

Moreover, even were temporal proximity of eight months, without more, enough at this stage to nudge Dzogovic's claim for retaliation over the plausibility threshold, the fact that the other Plaintiffs here (with the exception of Velo, whose employment ended in April 2022, prior to the protected activity at issue), are still employed despite engaging in the same exact protected activity as Dzogovic, nudges his claim back the other way. See AC ¶¶7, 8, 10, 12 (alleging that the dates of employment for Amaya, Montebon, Anton and Pruitt are through present). Accordingly, Dzogovic's individual claims for FLSA and NYLL retaliation are insufficient and must be dismissed.

**G. Alternatively to Dismissing the Retaliation Claims, the Court Should Dismiss the Claim for Unlawful Tip Retention Under the FLSA and Decline to Exercise Supplemental Jurisdiction Over the Remaining State Law Claims**

In the event that the Court decides that the retaliation claims survive the pleading stage, it must still dismiss the only other federal claim - -  unlawful tip retention under the FLSA for the reasons discussed at length above: the FLSA is only concerned with unpaid wages and overtime, and absent a plausible allegation that the employer's improper retention of tips brought the employee's average weekly wage below the minimum wage, the claim does not arise under federal law.  As the AC here does not allege what Plaintiffs earned per hour, or how much money they earned in any given week together with how many hours they worked, or any other facts that would reveal their average weekly rate of pay, it does not state a claim for unlawful tip retention under the FLSA.  Once this first claim is dismissed, the Court should decline to exercise supplemental jurisdiction over the non-retaliation state law claims under 28 U.S.C. §1367.

"Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 387 (1998); 28 U.S.C. § 1367(a). Claims are part of the same case or controversy when both the state law claims and federal claims "derive from a common nucleus of operative fact." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997). Once a common nucleus is found, a federal court's exercise of supplemental jurisdiction, "while not automatic, is a favored and normal course of action." *Promisel v. First American Artificial Flowers*, 943 F.2d 251, 254 (2d Cir. 1991).  However, the Court has discretion to decline to exercise supplemental jurisdiction if the claim raises a novel or complex issue of State law, the state law claims "substantially predominates," the district court has dismissed all claims over

which it has original jurisdiction, or in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

Here, the Court should decline to exercise supplemental jurisdiction over the state law claims even if it declines to dismiss Dzogovic's individual retaliation claims. The claims for improper tip credit, retention, call in pay and uniform pay under the NYLL do not derive from a common nucleus of operative facts Dzogovic's individual claim for retaliatory termination, and the Court should decline to oversee a NYLL class action on the basis of a single individual's independent claim.

## <u>CONCLUSION</u>

For these reasons, it is respectfully submitted that the Court should grant Defendants' motion to dismiss the Amended Complaint in its entirety, or alternatively, dismiss the claim for unlawful tip retention under the FLSA and decline to exercise supplemental jurisdiction over the remaining non-retaliation state law claims, together with all other relief the Court deems just and proper.