```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                                               :
ANDREA AMAYA, BENCHER MONTEBON, OLSI                           :
VELO, JASMIN DZOGOVIC, RICHARD ANTON, and                      :
SARAH PRUITT, individually and on behalf of others             :
similarly situated,                                            :     23-cv-8897 (LJL)
                                                               :
                            Plaintiffs,                        :     MEMORANDUM AND
                                                               :         ORDER
              -v-                                              :
                                                               :
LA GRANDE BOUCHERIE LLC, THE GROUP US                          :
MANAGEMENT LLC, and EMIL STEFKOV,                              :
                                                               :
                            Defendants.                        :
                                                               :
---------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/13/2024

LEWIS J. LIMAN, United States District Judge:

Defendants La Grande Boucherie LLC ("Grande Boucherie"), the Group US Management LLC ("The Group"), and Emil Stefkov ("Stefkov," and together with Grande Boucherie and Group US Management, "Defendants") move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Amended Complaint against them for failure to state a claim for relief. Dkt. No. 27. For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

For purposes of this motion, the Court accepts the well-pleaded allegations of the Amended Complaint as true.

Defendants Grande Boucherie and The Group are New York limited liability companies that own and operate La Grande Boucherie ("La Grande Boucherie" or the "Restaurant"), a restaurant located on West 53rd Street in New York, New York. Dkt. No. 25 ¶ 16. Stefkov is the

owner and operator of Grande Boucherie and The Group. *Id.* ¶ 18. Plaintiffs Andrea Amaya ("Amaya"), Bencher Montebon ("Montebon"), Olsi Velo ("Velo"), Jasmin Dzogovic ("Dzogovic"), Richard Anton ("Anton"), and Sarah Pruitt ("Pruitt") are or were employed by Defendants at La Grande Boucherie as either servers or a bartender. *Id.* ¶¶ 7–13. Amaya has been employed by Defendants at La Grande Boucherie as a server from around September 2020 through the present. *Id.* ¶ 7. Montebon has been employed as a bartender at the Restaurant from around May 2021 through the present. *Id.* ¶ 8. Dzogovic was employed as a server at the Restaurant from around February 2022 through around August 17, 2023. *Id.* ¶ 9. Anton has been employed as a server at the Restaurant from around September 2020 through the present. *Id.* ¶ 10. Velo was employed as a server at the Restaurant from around January 2021 through around April 2022. *Id.* ¶ 11. Pruitt has been employed as a server at the Restaurant from around September 2020 through the present. *Id.* ¶ 12.

Plaintiffs allege that Defendants violated numerous provisions of the Fair Labor Standards Act of 1938 ("FLSA") and the New York Labor Law ("NYLL"). From around November 2020 through early 2023, Defendants established and imposed a tip pool on the food service workers at the Restaurant without distributing all of the incoming tips to the food service workers and while permitting two captains who acted in a managerial capacity to share in the tip pool. *Id.* ¶¶ 38, 46. The former allegation is based upon a discrepancy between the tips displayed on the application used by Defendants to monitor and track daily tips received at the Restaurant, namely the Toast Application, and the application used by Defendants to monitor and track the daily tips distributed to Defendants' food service workers, namely the Payday Application. *Id.* ¶ 39. Specifically, Plaintiffs identify three dates on which the Toast Application reflected more tips received by the Restaurant than were distributed to the food service workers:

2

(1) on or about December 4, 2021, the Toast Application reflected around $29,286.01 in total tips brought into the Restaurant and the Payday Application reflected around $26,108.41 in total tips distributed to the food service workers; (2) on or about December 11, 2021, the Toast Application reflected around $31,420.07 in total tips received by the Restaurant and the Payday Application reflected around $28,338.48 in total tips distributed to the food service workers; and (3) on or about December 31, 2021, the Toast Application reflected around $25,009.55 in total tips received by the Restaurant and the Payday Application reflected around $21,119.00 in total tips distributed to the food service workers. *Id.* ¶ 42. In addition, two captains—Susanna Holder and Aaron Blankfield—participated in the tip pool although they did not engage in any direct food service to patrons. *Id.* ¶ 48.

Plaintiffs further allege that Defendants had a widespread pattern and practice of withholding call-in pay from the food service workers, including Plaintiffs. *Id.* ¶ 50.

Defendants also required food service workers at the restaurant to wear uniforms. Female food service workers, including the female Plaintiffs, had to wear white button-down shirts, black dress pants, suspenders, and black dress shoes. *Id.* ¶ 56. Male food service workers, including the male Plaintiffs, had to wear white button-down shirts, black dress pants, vests, black ties, and black dress shoes. *Id.* ¶ 57. Plaintiffs allege that Defendants required the Plaintiffs to purchase and maintain their own uniforms. *Id.* ¶¶ 58–60.

Finally, Plaintiff Dzogovic claims that Defendants retaliated against her for asserting her FLSA and NYLL rights. Specifically, she alleges that around January 2023, she retained counsel and informed Defendants that she intended to bring wage and hour and tip claims against them. *Id.* ¶ 61. Around June 2023, Dzogovic and the other Plaintiffs informed Defendants that they would move forward with the lawsuit. *Id.* Defendants allegedly retaliated against Dzogovic by

3

issuing two pretextual write-ups against her on approximately August 10, 2023 based on patron complaints about the taste of their food, and then terminating her employment on approximately August 17, 2023. *Id.* ¶¶ 62–63.

## PROCEDURAL HISTORY

Plaintiffs initiated this action by complaint filed on October 12, 2023. Dkt. No. 9.[1]

Plaintiffs filed a First Amended Complaint on December 7, 2023. Dkt. No. 25.[2] Plaintiffs bring their FLSA claims as a collective action on behalf of themselves and similarly situated employees—namely, servers, bussers, runners, sommeliers, bartenders, barbacks and hostesses who fell into the category of "tipped employees" in the three years preceding the filing of the action. *Id.* ¶¶ 21, 23. They also bring claims as a Rule 23 class action on behalf of all food service employees employed by Defendants within six years prior to the filing of the Complaint. *Id.* ¶ 28.

Defendants filed the instant motion to dismiss along with supporting papers on December 19, 2023. Dkt. Nos. 27–29. On January 27, 2024, Plaintiffs filed a memorandum of law in opposition to the motion. Dkt. No. 32. On February 12, 2024, Defendants filed a reply memorandum of law in further support of the motion. Dkt. No. 36.

## DISCUSSION

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

---

[1] Plaintiffs attempted to file their complaint on October 10, 2023, but it was rejected for a filing error. Dkt. No. 1.
[2] Defendants filed a motion to dismiss the complaint on November 7, 2023. Dkt. No. 20. After Plaintiffs filed the Amended Complaint, the Court denied the motion to dismiss the complaint as moot on December 8, 2023. Dkt. No. 26.

*Twombly*, 550 U.S. 544, 557 (2006)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This "does not impose a probability requirement at the pleading stage" but rather "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011). That is, a complaint need not allege "detailed factual allegations," but "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.

In reviewing a motion to dismiss under Rule 12(b)(6), a court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The ultimate question is whether "[a] claim has facial plausibility, [*i.e.*,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

**I.     Wage and Tip Claims**

Defendants argue that the Court must dismiss the First Amended Complaint's wage and tip claims. The First Amended Complaint alleges that Defendants violated both the FLSA and

the NYLL by not distributing all of the tips brought into La Grande Boucherie to its food service workers. Dkt. No. 25 ¶ 43. It relies on two sets of factual allegations. First, the Toast and the Payday Applications which track daily tips received and daily tips distributed to food service workers contained discrepancies, reflecting that not all tips received were distributed. *Id.* ¶¶ 41–42. Second, two captains, who acted as managers and not in any service capacity, shared in the tip pool. *Id.* ¶¶ 47–48.

As an initial matter, Defendants argue that the Court must dismiss Plaintiffs' minimum wage claim under the NYLL because the First Amended Complaint "does not actually allege—even in a conclusory fashion—that Defendants failed to pay Plaintiffs less than the statutory minimum wage." Dkt. No. 28 at 6. Under the NYLL, "an employee cannot state a claim for a minimum wage violation unless her average hourly wage falls below the minimum wage." *Baldia v. RN Express Staffing Registry LLC*, 633 F. Supp. 3d 693, 712 (S.D.N.Y. 2022) (quoting *Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390, 402 (E.D.N.Y. 2015)). Plaintiffs have not alleged that the average hourly rate of pay for any of the service workers was less than the applicable minimum wage, nor that the misappropriation of tips resulted in pay below the NYLL minimum wage. *See* Dkt. No. 25 at ¶¶ 79–84. The Court therefore dismisses Plaintiffs' NYLL minimum wage claim. *See Altamura v. Reliance Commc'ns, LLC*, 2023 WL 2504238, at *3 (E.D.N.Y. Feb. 28, 2023), *report and recommendation adopted in relevant part*, 2023 WL 5843720 (E.D.N.Y. Sept. 11, 2023).

But Plaintiffs also bring claims, under both the FLSA and NYLL, for unlawful retention of tips. Dkt. No. 25 ¶¶ 65–69, 85–90. The FLSA, as amended by the Consolidated Appropriations Act in 2018, provides: "An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of

employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B).  Thus, "Congress has specifically prohibited employers covered by the FLSA from diverting employee tips to managers regardless of whether they take the tip credit." *Devillaz v. Atmosphere Gastropub, Inc.*, 2023 WL 3486611, at *4 (D. Colo. May 15, 2023); *see Munoz v. Grp. US Mgmt. LLC*, 2023 WL 5390204, at *5 (S.D.N.Y. Aug. 22, 2023); *Thapa v. Patriot Inv. LLC*, 2023 WL 8291808, at *4 (D. Colo. July 25, 2023).  Section 216(b) of FLSA, as amended in 2018, provides: "Any employer who violates Section 203(m)(2)(B) of this title shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).

"New York law similarly prohibits employers from requiring tipped employees to share tips with non-service employees or managers."  *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 240 (2d Cir. 2011).  The NYLL states:

> No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee . . . .  Nothing in this subdivision shall be construed as affecting . . . the sharing of tips by a waiter with a busboy or similar employee.

N.Y. Labor Law § 196-d.  As the Second Circuit has explained, that provision "bars employers from requiring tipped employees to share tips with employees who do not perform direct customer service—i.e., employees who are not 'busboy[s] or similar employee[s]' and employees who are managers or 'agent[s]' of the employer."  *Shahriar*, 659 F.3d at 240 (alterations in original).

As refined in their reply memorandum of law, Defendants make two principal arguments in favor of dismissing Plaintiffs' tip retention claims: (1) the actual records of Toast and Payday

reflect no discrepancies between amounts received and amounts paid; and (2) the two captains did not have managerial authority and engaged in direct food service to patrons.[3] Dkt. No. 36 at 1–2; Dkt. No. 28 at 6–11. The former argument is based on the declaration of Angela Wang—the Director of Human Resources for The Group and Grande Boucherie—that Payday and Toast are fully and finally synced only once per week, such that (for example) the data for December 4, 2021 was synced on December 7, 2021. Dkt. No. 29 ¶ 9. Defendants also submit what they assert are the correct snapshots from the Payday Application, showing that there was no discrepancy between the tips received and those paid on the relevant dates. *Id.* ¶¶ 7–11; Dkt. No. 29-1. Defendants base the latter argument on what they claim are the more detailed allegations of the Amended Complaint and on the decision of the New York Court of Appeals in *Barenboim v. Starbucks Corp.*, 995 N.E.2d 153 (N.Y. 2013).

Defendants' arguments are without merit. Ms. Wang's declaration and the screenshots it attaches are not incorporated by reference into the Amended Complaint and not properly cognizable on this motion. "[A] court may consider documents incorporated in a complaint by reference on a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) without converting it to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56." *Gray v. Wesco Aircraft Holdings, Inc.*, 2020 WL 1700034, at *10 (S.D.N.Y. Apr. 7, 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021) (summary order); *see Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–

---

[3] Defendants initially argued that an employee can bring a tip misappropriation claim under FLSA only to the extent that the employer claimed a tip credit and the misappropriation of tips left the employee with hourly wages less than the minimum wage. Dkt. No. 28 at 4 (citing *Chen v. Shanghai Café Deluxe, Inc.*, 2023 WL 2401376, at *9 (S.D.N.Y. Mar. 8, 2023) and *Shum v. Jili Inc.*, 2023 WL 2974902, at *12 (E.D.N.Y. Mar. 19, 2023)). *Chen* and *Shum* were decided on motions for a default judgment without adversarial testing and relied on pre-2018 caselaw. In any event, Defendants have since withdrawn their argument that FLSA does not allow for an employee to recover for unlawful tip retention in the absence of an allegation that the retention of tips resulted in wages below the minimum wage. Dkt. No. 36 at 2 n.1.

31 (2d Cir. 2016); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Cortec Indus., Inc. v. Sum Holding*, 949 F.2d 42, 47 (2d Cir. 1991). A court may also refer to a document on a motion to dismiss when the plaintiff has relied on the "terms and effect" of the document in drafting a complaint and the document is thus integral to the complaint. *Bongiorno v. Baquet*, 2021 WL 4311169, at *10 (S.D.N.Y. Sept. 20, 2021) (quoting *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005)). At the same time, however, a court may not consider a document not attached to the complaint on a motion to dismiss "if a 'dispute exists regarding the authenticity or accuracy of the document.'" *Id.* at *11 (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)).

Ms. Wang's declaration and the screenshots she attaches are neither incorporated by reference nor integral to the complaint and Plaintiffs have challenged their accuracy and authenticity. The Amended Complaint refers to and relies upon data displayed in the Toast and Payday Applications on each December 4, 2021, December 11, 2021, and December 31, 2021. Dkt. No. 25 ¶ 42. On those days, the applications allegedly showed discrepancies between tips received and tips paid. *Id.* ¶¶ 41–42. By Defendants' own account, the snapshots attached to the Wang declaration reflect data that was synchronized days later. Dkt. No. 29 ¶ 9. The snapshots thus were not those upon which the Amended Complaint relies and which are referred to in the Amended Complaint. It may be that discovery establishes that the comparisons to which the Amended Complaint refers are not accurate and that, as Ms. Wang declares, Payday was only "fully and finally synced with Toast once per week." *Id*. But that is a matter that will have to await discovery and perhaps a motion for summary judgment and cannot be resolved solely on the allegations of the Amended Complaint.

Moreover, whether the two individuals to whom Plaintiffs refer in the Amended

9

Complaint exercised managerial or supervisory authority such that they were ineligible for participation in the tip pool is a "fact-laden" question. *See Hoxhaj v. Michael Cetta, Inc.*, 2023 WL 3455444, at *6 (S.D.N.Y. May 15, 2023). Noteworthy indicia of whether an employee is a manager "might include the ability to discipline subordinates, assist in performance evaluations or participate in the process of hiring or terminating employees, as well as having input in the creation of employee work schedules, thereby directly influencing the number and timing of hours worked by staff as well as their compensation." *Barenboim*, 995 N.E.2d at 159–160; *see Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 467–68 (S.D.N.Y. 2015). The Amended Complaint alleges that the two captains acted as managers, did not engage in any direct food service to patrons, and had managerial authority, including the ability to void checks, to exercise discipline, to assign tasks, and to monitor and oversee the entire restaurant in a managerial capacity. Dkt. No. 25 ¶ 48. That is enough to survive a motion to dismiss.[4]

## II.   Call-In Pay

Next, Defendants contend that Plaintiffs fail to state a claim for violation of the call-in pay provisions of the NYLL. Dkt. No. 28 at 11–12. That argument is without merit.

New York's Hospitality Industry Wage Order provides, in pertinent part:

> An employee who by request or permission of the employer reports for duty on any day, whether or not assigned to actual work, shall be paid at the applicable wage rate . . . for at least three hours for one shift, or the number of hours in the regularly scheduled shift, whichever is less.

12 N.Y.C.R.R. § 146-1.5(a)(1).

Plaintiffs have pleaded facts sufficient to establish a violation of this order. Plaintiffs

---

[4] Because Plaintiffs have stated a claim for unlawful tip retention under the FLSA, the Court does not address Defendants' further argument that "[o]nce this [FLSA] claim is dismissed, the Court should decline to exercise supplemental jurisdiction over the non-retaliation state law claims." Dkt. No. 28 at 17.

allege that each of Pruitt, Anton, Dzogovic, Amaya, and Montebon were requested to report for duty by Defendants and did report without receiving any wages. Dkt. No. 25 ¶¶ 50–55. Pruitt was scheduled to work a shift in the winter of 2022 but then sent home without being paid, *id.* ¶ 51; Anton was scheduled to work a shift in April 2021 but sent home without being paid, *id.* ¶ 52; Dzogovic was scheduled to work a shift in July 2022 but then sent home without being paid, *id.* ¶ 53; Amaya was scheduled to work shifts on three occasions in the summer of 2021 and another three occasions in the winter of 2022 but then sent home without being paid, *id.* ¶ 54; and Montebon was scheduled to work a shift in the summer of 2022 but then sent home without being paid, *id.* ¶ 55. The Amended Complaint does not rest solely upon the "boilerplate allegations" found insufficient in *Lennert v. Delta-Sonic Carwash Systems, Inc.*, 2022 WL 18859077, at *6 (W.D.N.Y. Nov. 1, 2022) ("Plaintiffs generally allege that 'sometimes' '[Defendant] unlawfully refused to pay Plaintiffs.'"), and *Gregory v. Stewart's Shops Corp.*, 2015 WL 893058, at *8 (N.D.N.Y. Mar. 2, 2015) (holding "allegations that 'plaintiffs' were 'regularly called in' for meetings and to work shifts but were not paid the statutorily required call-in wage" were insufficient to state a claim). Rather, the First Amended Complaint contains facts which can be tested through discovery establishing the elements of a violation. *See, e.g.*, *Orthodox Jewish Coal. of Chestnut Ridge v. Village of Chestnut Ridge*, 2021 WL 6127049, at *5 (S.D.N.Y. Dec. 28, 2021) (rejecting the argument that specific dates of occurrence are required at the pleading stage). The Court therefore denies Defendants' motion to dismiss the Amended Complaint's claim for call-in pay.

### III. Uniforms

Defendants also urge the Court to dismiss Plaintiffs' claim that Defendants violated the NYLL's requirement that employers pay for the cost of their employees' uniforms. Dkt. No. 28

11

at 12–13.

New York law dictates that "[w]hen an employee purchases a required uniform, he or she shall be reimbursed by the employer for the total cost of the uniform no later than the next payday." 12 N.Y.C.R.R. § 146-1.8(a). A required uniform is "clothing required to be worn while working at the request of an employer . . . except clothing that may be worn as part of an employee's ordinary wardrobe." *Id.* § 146-3.10(a). An employee's "ordinary wardrobe" is "ordinary basic street clothing selected by the employee where the employer permits variations in details of dress." *Id.* § 146-3.10(b).

The First Amended Complaint alleges that Defendants required female food service workers to wear white button-down shirts, black dress pants, suspenders, and black dress shoes, and required male food service workers to wear white button-down shirts, black dress pants, vests, black ties, and black dress shoes. Dkt. No. 25 ¶¶ 55–56.

Defendants argue that these items are all "ordinary basic street clothing" and thus do not constitute uniforms under New York law. Dkt. No. 28 at 13. The cases upon which Defendants rely, however, all arose either after trial, *see Salinas*, 123 F. Supp. 3d at 476, or on summary judgment, *see Lu v. Jin Fong Rest., Inc.*, 503 F. Supp. 2d 706, 712 (S.D.N.Y. 2007); *see also Allende v. PS Brother Gourmet, Inc.*, 2013 WL 11327098, at *4 (S.D.N.Y. Feb. 1, 2013). With good reason: the question whether the particular garb that Defendants required Plaintiffs to wear constitutes ordinary street clothing is better decided as a matter of fact "than as a matter of law." *Ramirez v. CSJ & Co.*, 2007 WL 700831, at *2 (S.D.N.Y. Mar. 6, 2007); *see Mendez v. MCSS Rest. Corp.*, 564 F. Supp. 3d 195, 221 (E.D.N.Y. 2021); *Dix Palombo v. RCSH Operations, LLC*, 2020 WL 5094849, at *3 (M.D. Fla. Aug. 28, 2020); *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 293 (S.D.N.Y. 2011). "[T]empted" as judges may be to adjudicate "current

dress norms" with legal exactitude, *Ramirez*, 2007 WL 700831, at *2, whether women's suspenders and men's vests are ordinary basic street clothing is better left to the collective wisdom of a jury or discerning palate of an expert fashion critic than to a profession whose own distinctive attire has evolved little to accommodate contemporary trends. Because Plaintiffs have plausibly alleged that the required clothing for food service workers was unusual enough to qualify as a uniform under New York law, the Court cannot dismiss their uniform costs claim at this stage.

## IV.    Retaliation

Finally, Defendants contend that Dzogovic has failed to state claims for retaliation under the FLSA and NYLL.

The FLSA provides that it is "unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3). Similarly, the NYLL provides that an employer shall not "discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee . . . because such employee has caused to be instituted or is about to institute a proceeding under [the NYLL.]" N.Y. Lab. Law § 215(a)(iii). To state a retaliation claim under these provisions, an employee must allege "(1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Salazar v. Bowne Realty Assocs., L.L.C.*, 796 F. Supp. 2d 378, 384 (E.D.N.Y. 2011); *see also Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 130 (S.D.N.Y. 2020).

The Amended Complaint alleges that Dzogovic retained counsel and notified Defendants

that she intended to pursue tip misappropriation claims against them in January 2023. Dkt. No. 25 ¶ 61. In June 2023, Dzogovic informed Defendants that she and the other Plaintiffs in this action "would proceed accordingly and move forward with this action." *Id.* According to the Amended Complaint, Defendants retaliated against Dzogovic for taking legal action by issuing her two pretextual write-ups on August 10, 2023, and then terminating her employment on August 17, 2023. *Id.* ¶ 62.

Defendants do not dispute that the Amended Complaint alleges that Dzogovic engaged in protected activity and faced adverse action. Instead, Defendants argue that Plaintiffs have not alleged a causal connection between the two. Dkt. No. 28 at 14–15. But Dzogovic notified Defendants that she was filing a lawsuit against them for FLSA and NYLL violations in June 2023 and then was subjected adverse actions in August 2023.[5] That two-month period provides "a sufficiently close temporal proximity to establish causation" at this early stage. *Ramah v. 138 Hillside Ave Inc.*, 2021 WL 7906551, at *7 (E.D.N.Y. Aug. 24, 2021). Defendants contend that a causal inference is nevertheless untenable because, with the exception of Velo, the other Plaintiffs "are still employed despite engaging in the same exact protected activity as Dzogovic." Dkt. No. 28 at 16. Yet the Amended Complaint alleges that Dzogovic was particularly instrumental in bringing this suit. She alone told Defendants that she intended to pursue claims against them in January 2023. Dkt. No. 25 ¶ 61. Only in June 2023, when Dzogovic told

---

[5] Although Dzogovic notified Defendants that she intended to pursue claims against them in January 2023, Defendants are incorrect that January 2023 is therefore the sole date of Dzogovic's protected activity. *See* Dkt. No. 28 at 16. Pursuing claims and filing a lawsuit are both legally and logically distinct. One can pursue claims through negotiation, mediation, and a variety of other dispute resolution mechanisms without bringing a lawsuit. Thus, Dzogovic's notification to Defendants in June 2023 that she would bring this suit against them with the other named Plaintiffs was a separate activity from her communications with Defendants in January 2023.

Defendants that she would be filing the instant lawsuit, was she joined by "the other Plaintiffs." *Id.* Accordingly, it is hardly implausible that Defendants would single Dzogovic out for retaliation based on her key role in bringing this case against them. Thus, the Amended Complaint contains sufficient factual allegations to state claims for FLSA and NYLL retaliation.

## CONCLUSION

Defendants' motion to dismiss the First Amended Complaint is GRANTED as to Plaintiffs' minimum wage claim under the NYLL, but DENIED as to Plaintiffs' remaining claims. The Clerk of Court is respectfully directed to close Dkt. No. 27.

SO ORDERED.

Dated: May 13, 2024
      New York, New York

_____
      LEWIS J. LIMAN
      United States District Judge